# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

TINA M. S.,[1]                    Case No. 1:22-cv-236
      Plaintiff,             Litkovitz, M.J.

      vs.

COMMISSIONER OF               **ORDER**
OF SOCIAL SECURITY,
      Defendant.

Plaintiff Tina M. S. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of Specific Errors (Doc. 9), the Commissioner's response (Doc. 11), and plaintiff's reply (Doc. 12).

## I. Procedural Background

Plaintiff protectively filed an application for DIB in February 2019, alleging disability since November 17, 2017, due to low vision, polyarticular osteoarthritis, irritable bowel syndrome, fibromyalgia, chronic migraines, arthritis, depression, memory problems, dizziness, and hand and feet numbness. (Tr. 212). The applications were denied initially and on reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* telephone hearing before administrative law judge (ALJ) Renita K. Bivins on December 17, 2020. (Tr. 37-72). Plaintiff and a vocational expert (VE) appeared and testified at the hearing. The day before

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

this hearing, plaintiff amended her onset date from November 17, 2017 to July 1, 2019.  (Tr. 13, referring to Tr. 207).  On April 22, 2021,[2] the agency issued an unfavorable decision.  (Tr. 7-30).  The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-6).

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

---

[2] The ALJ signed the decision on March 4, 2021 (Tr. 30), but the agency notified the plaintiff by letter of this date. (Tr. 7).

> 5) If the claimant can make an adjustment to other work, the claimant is not
> disabled.  If the claimant cannot make an adjustment to other work, the claimant
> is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four

steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

(6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy.  *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th

Cir. 1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. [Plaintiff] meets the insured status requirements of the Social Security Act
> through December 31, 2024.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since July 1, 2019,
> the amended alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. [Plaintiff] has the following severe impairments: Depressive disorder, bipolar
> related disorder; degenerative disc disease; osteoarthritis/polyarticular
> osteoarthritis; migraines; fibromyalgia; and anxiety and obsessive-compulsive
> disorder (20 CFR 404.1520(c)).
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that
> meets or medically equals the severity of one of the listed impairments in 20
> CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and
> 404.1526).

5. After careful consideration of the entire record, the undersigned finds that [plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except as follows: She is able to lift and carry up to 50 pounds occasionally and 25 pounds frequently; she is able to stand and/or walk 6 hours per 8 hour day and sit 6 hours per 8 hour day with normal breaks; she can frequently climb ladders, ropes or scaffolds; she can frequently stoop, kneel, crouch and crawl; she can frequently handle and finger with bilateral upper extremities; she can maintain concentration and sustain persistence and pace to complete simple and detailed tasks, but no complex tasks and no fast pace requirements such as automated assembly-line; and she can adapt to routine duties with no fast pace requirements.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[3]

7. [Plaintiff] . . . was 49 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [plaintiff]'s education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[4]

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from November 17, 2017, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 15-30).

## C. Judicial Standard of Review

---

[3] Plaintiff's past relevant work was as a real estate sales agent (SVP 5, light exertion) and a payroll clerk (SVP 4, sedentary exertion). (Tr. 28, 63).

[4] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative medium-exertion, unskilled occupations such as linen room attendant (6,000 jobs in the national economy); counter supply worker (37,000 jobs in the national economy); hospital cleaner (55,000 jobs in the national economy); and laborer, stores (8,900 jobs in the national economy). (Tr. 29, 64-68).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a [plaintiff] on the merits or deprives the [plaintiff] of a substantial right."  *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

### D.  Specific Errors

Plaintiff's first assignment of error concerns her fibromyalgia, and she argues primarily that the ALJ improperly required objective medical evidence of the condition.  Plaintiff's second assignment of error concerns her migraine headaches, and she argues that the ALJ failed to

5

evaluate this severe condition under Listing 11.02, as set forth in Social Security Ruling (SSR)[5] 19-4p, 2019 WL 4169635 (Aug. 26, 2019) ("Evaluating Cases Involving Primary Headache Disorders"), or otherwise consider her migraines' frequency, severity, or duration.  Plaintiff's third assignment of error concerns the ALJ's assessment of the medical opinion evidence. Plaintiff's fourth assignment of error concerns her mental impairments, and she argues that the ALJ gave improper weight to certain considerations and ignored others.  Plaintiff's fifth assignment of error overlaps significantly with her first, second, and fourth and challenges the ALJ's assessment of her subjective symptoms.

Plaintiff raises a sixth assignment of error related to step five of the sequential evaluation process: that the ALJ used "improper hypothetical questions" with the VE.  (Doc. 9 at PAGEID 2118).  This, however, is effectively a restatement of plaintiff's assignments of error related to the ALJ's determination of plaintiff's residual functional capacity (RFC).  *See Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421-22 (6th Cir. 2014) (quoting *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.").  Similarly, plaintiff makes several references to her belief that Medical-Vocational Guidelines (Grid) Rule 201.14 directs a finding of disabled in this case.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1.  This argument,

---

[5] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

however, is premised on the conclusion that plaintiff should have been limited to sedentary

work—thus, the asserted error here is also with the ALJ's RFC determination.

Because plaintiff's assignments of error overlap, the Court's decision is organized

according to the substance of plaintiff's arguments. As such, the order of the discussion below

differs from the order of plaintiff's Statement of Specific Errors (Doc. 9).

    1. <u>Listing 11.02</u>

In her second assignment of error, plaintiff argues that the ALJ should have considered

Listing 11.02 because the ALJ found her migraines to be a severe impairment. (Doc. 9 at

PAGEID 2111, citing SSR 19-4p). The Commissioner argues in response that the ALJ did not

have to consider Listing 11.02 because plaintiff's counsel at the administrative level did not raise

it, and plaintiff did not raise a substantial question as to whether she could meet every

component of either Listing 11.02(B) or (D).

At step three of the sequential evaluation process, plaintiff carries the burden to show that

she has an impairment or combination of impairments that meets or medically equals the criteria

of an impairment listed in 20 C.F.R. § 404, Subpart P, App. 1. *Foster v. Halter*, 279 F.3d 348,

354 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant meets all of the criteria of a

listed impairment, she is disabled; otherwise, the evaluation proceeds to step four. 20 C.F.R. §§

404.1520(d)-(e); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also Rabbers*, 582 F.3d at 653

(citing 20 C.F.R. § 404.1525(c)(3)) ("A claimant must satisfy all of the criteria to meet the

listing.").

In evaluating whether a claimant meets or equals a listed impairment, an ALJ must

"actually evaluate the evidence, compare it to [the relevant listed impairment], and give an

explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). Otherwise, "it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id.* (citations omitted). The ALJ "need not discuss listings that the [claimant] clearly does not meet, especially when the claimant does not raise the listing before the ALJ." *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013). "If, however, the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing." *Id.* (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)); *see also Reynolds*, 424 F. App'x at 415-16 (holding that the ALJ erred by not conducting any step-three evaluation of the claimant's physical impairments where the ALJ found that the claimant had the severe impairment of back pain, and the claimant had put forth evidence that could meet the applicable Listing).

Where an ALJ does not discuss a Listing, the Court "must determine whether the record evidence raises a substantial question as to [a claimant's] ability to satisfy each requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 433 (6th Cir. 2014). To raise a substantial question, "[a] claimant must do more than point to evidence on which the ALJ could have based" her Listing finding. *Id.* at 432 (quoting *Sheeks*, 544 F. App'x at 641-42). "Rather, the claimant must point to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing." *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Id.* at 433; *see also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359,

366 (6th Cir. 2014) (finding harmless error in the ALJ's unexplained step-three findings where the claimant did not show that he could reasonably meet or equal a Listing's criteria).

SSR 19-4p indicates that primary headache disorder is not a listed impairment but directs consideration of Listing 11.02:

> Epilepsy (listing 11.02) is the most closely analogous listed impairment for an MDI of a primary headache disorder. While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing.

SSR 19-4p, 2019 WL 4169635, at *7. In pertinent part, this Listing describes:

> B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C). . . .
>
> . . . .
>
> D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
>
>   1. Physical functioning (see 11.00G3a); or
>
>   2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
>
>   3. Interacting with others (see 11.00G3b(ii)); or
>
>   4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
>
>   5. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. Part 404, Subpart P, App.1, § 11.02.

The ALJ did not err by failing to evaluate Listing 11.02 because plaintiff has not "point[ed] to specific evidence that demonstrates [s]he reasonably could meet or equal every

requirement of [Listing 11.02(B) or (D)]."[6] *Smith-Johnson*, 579 F. App'x at 432 (citing *Sullivan*, 493 U.S. at 530). Plaintiff relies on internist Malinda M. McCoy's October 2019 "Headaches Medical Source Statement" (Tr. 996-1001), in which Dr. McCoy checked boxes for associated symptoms of nausea, vomiting, throbbing, mental confusion, inability to concentrate, mood changes, visual disturbances, impaired sleep, impaired appetite, and dizziness. (Tr. 996). Dr. McCoy recorded that plaintiff's migraines occurred one to three times per week, lasting eight to 24 hours each. (*Id.*). Dr. McCoy checked boxes for migraine triggers including anxiety, stress, and lack of sleep and aggravating factors including bright lights, moving around, and noise. (Tr. 997). Dr. McCoy checked boxes indicating that plaintiff could do virtually nothing while experiencing a migraine and would have to lie down in a dark, quiet room with a cold pack for relief. (*Id.*; *see also* Tr. 50-51 (testimony)). In addition to Dr. McCoy's statement, plaintiff highlights her testimony regarding the lightheadedness and drowsiness that accompanied her migraine medications, that she had had 15 headaches during the month of her hearing before the ALJ (December 2020), and that insurance issues limited her access to otherwise effective medication. (Tr. 48, 50-51).

Critical to either relevant Listing 11.02 subsection, however, is a showing that plaintiff's migraines persisted at a level of *at least one every two weeks for three consecutive months*. 20 C.F.R. Part 404, Subpart P, App.1, §§ 11.02(B) and (D). In the very medical source statement

---

[6] Plaintiff appears to argue that her migraine headaches equal Listing 11.02(A) or (C) for "major seizures once a month." (Doc. 9 at PAGEID 2111). However, SSR 19-4p by its very terms limits the equivalency analysis to Listing 11.02(B) and (D). *See Gold v. Comm'r of Soc. Sec. Admin.*, No. CV-19-1494, 2020 WL 13481639, at *4 (D. Ariz. Feb. 13, 2020) (SSR 19-4p "applies only paragraphs 11.02(B) and (D)."). Plaintiff has not cited, and the Court has not found, any authority suggesting that SSR-14p applies to Listing 11.02(A) or (C) for generalized tonic-clonic seizures, which are "characterized by loss of consciousness accompanied by a tonic phase (sudden muscle tensing causing the person to lose postural control) followed by a clonic phase (rapid cycles of muscle contraction and relaxation, also called convulsions)." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, ¶ 11.01(H)(1)(a),

relied upon by plaintiff for her Listing argument, Dr. McCoy recorded plaintiff's report that her headaches were down to *one to two per month* "as relayed by patient." (Tr. 998). This is consistent with plaintiff's testimony that migraine medications "reduced the[ir] frequency. . . ." (Tr. 51; *see also* Tr. 998 (recording plaintiff's "good response" to a combination of Topamax and Imitrex)). One to two headaches per month does not meet either relevant subsection of Listing 11.02, which require at a minimum that migraines that occur "*at least once every 2 weeks*." 20 C.F.R. Part 404, Subpart P, App.1, § 11.02(D) (emphasis added).

Plaintiff's reports of more frequent headaches in isolated months does not satisfy the relevant Listings' plain language, which requires the denoted migraine frequency to last "for at least 3 consecutive months. . . ." *Id.* at §§ 11.02(B) and (D). *Cf. Corinne C. v. Comm'r of Soc. Sec.*, No. 1:20-cv-1034, 2022 WL 1590818, at *19 (S.D. Ohio May 19, 2022) (the plaintiff raised a substantial question as to Listing 11.02(B) where the record contained her detailed headache journal demonstrating that she met its frequency and duration requirements). Plaintiff has also failed to point to evidence raising a substantial question as to whether her headaches persist "despite adherence to prescribed treatment. . . ." 20 C.F.R. Part 404, Subpart P, App.1, §§ 11.02(B) and (D). Plaintiff asserts that she used migraine medications "without relief" (Doc. 9 at PAGEID 2112), but this is contradicted by her own testimony, in which she stated that her migraine medications are effective in reducing their frequency if not their severity (Tr. 51). In addition, in July of 2020, Dr. McCoy advised plaintiff to use Fioricet in lieu of Imitrex due to the possibility of rebound headaches (Tr. 1837), but plaintiff did not stop using Imitrex (Tr. 48). Plaintiff also testified that she was not pursuing admittedly effective Botox injections due to the burdensome process for obtaining it though her insurance; she did not state that it was

unavailable. (Tr. 51-52). Finally, plaintiff makes no effort to demonstrate satisfaction of the Listing 11.02(D) requirement of a "marked" limitation in at least one of the mental functioning areas. 20 C.F.R. Part 404, Subpart P, App.1, § 11.02(D). All of the foregoing bolsters the Court's conclusion that plaintiff has failed to raise a substantial question as to the applicability of either Listing 11.02(B) or (D).

Plaintiff's second assignment of error is overruled as it pertains to Listing 11.02(B) or (D). Given this conclusion, the Court need not consider whether plaintiff's failure to raise this Listing at the administrative level, while also represented by counsel, is dispositive.

### 2. Medical opinion evidence

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions. *See* 20 C.F.R. § 1520c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions.[7] *Id.* The Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[8] including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b).

---

[7] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

[8] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[9] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2) (emphasis added). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3)

consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

[9] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3).  Finally, the ALJ is not required to articulate

how he or she considered evidence from nonmedical sources.  20 C.F.R. § 404.1520c(d).

Plaintiff's argument regarding the ALJ's evaluation of the state agency's opinions in her

third assignment of error is the following:

> The ALJ erred at [Tr.] at 26-28[10] under 20 CFR 404.1520c.  The State Agency
> evaluations were last done in June, 2019, before the onset date of July, 2019.  The
> reviewing doctor at [Tr.] at 86 [Dr. Prosperi] is #12, a family doctor and not a
> rheumatologist like Dr. Farhey or a neurologist[11] for the migraines, Dr. McCoy.
> The consultative exams [by Drs. Hassan and Griffiths] were done in 2018, well
> before the onset date.  The ALJ erred on them at [Tr.] at 27.

(Doc. 9 at PAGEID 2113-14).  As to the opinions of Drs. Prosperi, Hassan, and Griffiths, this is

the extent of plaintiff's argument.  Given that the ALJ clearly considered medical records that

post-dated these opinions (*see, e.g.*, Tr. 21-22) and specifically noted such evidence in weighing

these opinions (Tr. 26-27), plaintiff's first argument lacks merit.  *See Spicer v. Comm'r of Soc.*

*Sec.*, 651 F. App'x 491, 493-94 (6th Cir. 2016) (quoting *Blakley*, 581 F.3d at 409) ("[A]n ALJ

may rely on the opinion of a consulting or examining physician who did not have the opportunity

to review later-submitted medical records if there is 'some indication that the ALJ at least

considered these facts' before assigning greater weight to an opinion that is not based on the full

record.").  Plaintiff's second argument also lacks merit, as a doctor's specialty is only one of the

factors an ALJ is to consider in evaluating a medical opinion and not one the ALJ was required

to articulate in her decision.  *See* 20 C.F.R. §§ 404.1520c(b)(2), (c)(4).

---

[10] These pages of the ALJ's decision discuss the medical opinions of state agency reviewers Anne Prosperi, D.O., and Todd Finnerty, Psy.D.; consultative examiners Noor Hassan, M.D., and Brian R. Griffiths, Psy.D.; and Dr. McCoy.

[11] Dr. McCoy is not a neurologist.  (*See, e.g.*, Tr. 1827 (record reflecting her department as "Internal Med")).

14

Plaintiff develops further arguments regarding the ALJ's treatment of Dr. McCoy's "Headaches Medical Source Statement" (Tr. 996-1001); rheumatologist Dr. Farhey's "Fibromyalgia Medical Source Statement" (Tr. 950-53); and the limitations assessed by the state agency mental RFC reviewer Dr. Finnerty (Tr. 86-88).[12]  Beginning with Dr. McCoy, plaintiff argues that the ALJ would have found her extreme opinions (e.g., that plaintiff would miss four or more days of work per month) consistent and supportable if the ALJ had considered the frequency, severity, and duration of her migraines and their effect on her functioning (e.g., being confined to lying down in a dark room).  The Commissioner argues in response that the ALJ adequately considered the supportability and consistency of Dr. McCoy's opinion under the applicable regulation.

The ALJ's treatment of Dr. McCoy's October 2019 opinion is supported by substantial evidence.  The ALJ referred to plaintiff's treatment records since the amended onset date showing routine and conservative treatment with no significant deficits (Tr. 27), that Botox injections were effective for migraines (*id.*, referring to Tr. 1827 (July 2020 Dr. McCoy record)), that a reported uptick in headaches could be related to reported daily use of Imitrex (*id.*, referring to Tr. 1832 (July 2020 Dr. McCoy record)), and that plaintiff was not reporting headaches in August 2020 (*id.*, referring to Tr. 1852 (Dr. McCoy record)).  The ALJ reasonably determined that the persuasiveness of Dr. McCoy's opinion was greatly reduced given the lack of supportive medical evidence.  *See* 20 C.F.R. § 404.1520c(c)(1).  The ALJ also noted that Dr. McCoy's extreme opinion was inconsistent with plaintiff's reported activities of daily living, including

---

[12] Plaintiff discusses Dr. Finnerty's opinion in her fourth assignment of error.  (*See* Doc. 9 at PAGEID 2116 ("The State Agency psychological limitations at [Tr. 78 and 84] are accurate, and the ALJ erred in not adopting them.")).

preparing food; baking; eating in restaurants; taking stairs to her bedroom; and some walking, yardwork, shopping, laundry, and driving. (*See* Tr. 27; *see also* Tr. 24 and 26, referring to Tr. 1848 (activities reported by plaintiff to Dr. McCoy in August 2020) and Tr. 42, 54-58 (testimony)). *See* 20 C.F.R. § 404.1520c(c)(2). While plaintiff argues that the ALJ overstated her activities of daily living, the ALJ properly considered this evidence and testimony when evaluating Dr. McCoy's opinion. *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997)) ("[T]he ALJ properly considered [the plaintiff's ability to perform day-to-day activities] as one factor in determining whether [the plaintiff's] testimony was credible.").

The ALJ discussed both the supportability and consistency of Dr. McCoy's opinion as required by the regulations. Her decision in this regard is therefore supported by substantial evidence.

Plaintiff next argues that the ALJ discounted Dr. Farhey's fibromyalgia statement, particularly its notation of fibromyalgia-related fatigue, depression, and tender points, because of a lack of supporting objective medical evidence, which is inappropriate in the fibromyalgia context. The Commissioner argues that Dr. Farhey did not provide a medical opinion because she declined to opine on plaintiff's functional limitations.

The ALJ's treatment of Dr. Farhey's statement is supported by substantial evidence. The regulations define a "medical opinion" as:

> a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . . .

(i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).

In her statement, Dr. Farhey did not answer any of the questions related to plaintiff's functional limitations. (Tr. 951-53). Under the regulations, it therefore does not constitute a medical opinion that the ALJ was required to evaluate. *See* 20 C.F.R. § 404.1520c(a) ("We will articulate in our determination or decision how persuasive we find *all of the medical opinions* and all of the prior administrative medical findings in your case record.") (emphasis added). *Cf. Bowen*, 478 F.3d at 749 ("Moreover, exclusive reliance on Dr. Dumas's opinion is misplaced because he did not submit an RFC assessment of Bowen.").[13]

Plaintiff also faults the ALJ for failing to recontact Dr. Farhey to clarify her statement regarding plaintiff's tender points. A duty to recontact is triggered, however, only when "the evidence does not support a treating source's opinion . . . *and* the adjudicator cannot ascertain the

---

[13] Even if it were properly deemed a medical opinion, the ALJ specifically discussed the medical records attached to Dr. Farhey's statement (Mar. and July 2019 visit records). (*See* Tr. 20-21). The ALJ noted that in these records, Dr. Farhey recorded plaintiff's reported walking and light exercise and recommended conservative care and exercise. (*Id.*, referring to Tr. 544, 560, 981, and 990). *See* 20 C.F.R. § 404.1520c(c)(1). The ALJ further noted that in a subsequent January 2020 record, Dr. Farhey recorded improvement with plaintiff's fibromyalgia and recommended increased activity. (Tr. 21, referring to Tr. 2028 and 2048). *See* 20 C.F.R. § 404.1520c(c)(2).

basis of the opinion from the record." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273 (6th Cir. 2010) (quoting SSR 96-5p, 1996 WL 374183, at *6 (July 2, 1996)).  The ALJ was not required to recontact Dr. Farhey to obtain an opinion from her where the record contained other medical opinions.  *See Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) (an ALJ is generally required to recontact a medical source for an opinion where there are no opinions in the record on a claimant's functional limitations other than nonexamining agency opinions).

Finally, plaintiff appears to argue that the ALJ should have found Dr. Finnerty's opinion that she was moderately limited across mental functioning areas more persuasive and adopted the particular opinion that plaintiff would benefit from an isolated work station.  (*See* Tr. 84-88). The Commissioner argues that the ALJ referenced evidence inconsistent with Dr. Finnerty's opinion and the fact that it was largely supported by only a single, pre-amended onset consultative examination.  The Commissioner also argues that the ALJ was not required to adopt every restriction recommended in Dr. Finnerty's opinion because the ALJ found it only somewhat persuasive.

The ALJ did not err in her assessment of Dr. Finnerty's opinion.  The ALJ noted that Dr. Finnerty's opinion appeared to be supported only by a one-time consultative examination by Dr. Griffiths.  (Tr. 28, referring to Tr. 471-77).  *See* 20 C.F.R. § 404.1520c(c)(1).  The ALJ also discussed that Dr. Finnerty's opinion was inconsistent with later medical records showing limited clinical findings and plaintiff's own reported lack of mental health symptoms.  (*See* Tr. 28, referring to Tr. 1832 (July 2020 Dr. McCoy record) ("Mental status is at baseline. . . .  Mood normal."); Tr. 1852-53 (Aug. 2020 Dr. McCoy record) ("[N]egative for . . . dysphoric mood. The patient is not nervous/anxious. . . .  "Mood normal."); *see also* Tr. 23, referring to Tr. 612-16 (Mar. 2019 visit with CNP in Dr. McCoy's office) (noting symptoms of depression, not

anxiety); Tr. 545, 1932, and 1980-81 (Mar., July, and Oct. 2019 Dr. Farhey records) (though depression reported, observing normal mood, affect, behavior, judgment, and thought content)). *See* 20 C.F.R. § 404.1520c(c)(2).  The ALJ also noted that Dr. Griffiths' examination was "unremarkable" and he did not note anxiety or psychosis, all of which was consistent with the mental limitations in her RFC determination and suggested inconsistency between Dr. Finnerty's limitations and Dr. Griffiths' findings.  (Tr. 22, referring to Tr. 474).

The ALJ discussed the supportability and consistency of Dr. Finnerty's opinion, and the Court therefore finds that the ALJ's assessment thereof is supported by substantial evidence. "The ALJ was not required to include restrictions in the RFC that the ALJ did not accept." *Queen v. Comm'r of Soc. Sec.*, No. 2:19-cv-2426, 2020 WL 6268234, at *3 (S.D. Ohio Oct. 26, 2020) (citing *Hall v. Comm'r of Soc. Sec.*, No. 1:17-cv-363, 2018 WL 3524467, at *4 (S.D. Ohio July 23, 2018), *report and recommendation adopted*, 2018 WL 4031060 (S.D. Ohio Aug. 23, 2018)).

For the foregoing reasons, the ALJ's assessments of the opinions of Drs. Prosperi, Hassan, Griffiths, Mc. Coy, Farhey, and Finnerty are supported by substantial evidence.  Plaintiff's related objections in her third and fourth assignments of error are overruled.

### 3. Subjective symptom evaluation

Plaintiff asserts a discrete assignment of error related to the ALJ's assessment of her subjective symptoms (assignment of error five), which overlaps significantly with assignments of error one (fibromyalgia), two (migraines), and four (mental impairments).  Plaintiff argues that the ALJ improperly required objective medical evidence of fibromyalgia; failed to acknowledge evidence documenting plaintiff's corresponding poor sleep, fatigue, and depression; and

overstated plaintiff's activities of daily living.[14]  Regarding her migraines, plaintiff argues that the ALJ did not consider their frequency, severity or duration or the effects of her related medications.  Plaintiff also argues that the ALJ improperly suggested that only surgical treatment for fibromyalgia and migraines would evidence symptom severity on par with the limitations that she alleges.  Regarding her mental impairments, plaintiff argues that the ALJ unduly relied on the records of non-mental health specialists, did not discuss all of her related symptoms and medications, and gave disproportionate weight to plaintiff's lack of emergency or specialized care.  Finally, plaintiff implies that the ALJ ignored her strong work record in assessing the symptoms of her impairments.

ALJs are to "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record."  SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016) (superseding SSR 96-7p).  ALJs also evaluate what the agency formerly termed the "credibility" of a plaintiff's statements about his or her symptoms.  *See, e.g.*, *Rogers*, 486 F.3d at 246-49.  In March 2016, the agency eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character. . . ."  SSR 16-3p, 2016 WL 1119029, at *1.  To avoid such mistaken emphasis, this analysis is now characterized as the "consistency" of a claimant's subjective description of symptoms with the record.  *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x

---

[14] Plaintiff makes this latter argument with respect to her fibromyalgia, migraines, and mental impairments.  (*See* Doc. 9 at PAGEID 2111, 2113, and 2115).

165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

A two-step inquiry applies to symptom evaluation. The ALJ first determines if the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms. SSR 16-3p, 2016 WL 1119029, at *3; *see also* 20 C.F.R. § 404.1529(a); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). Step two of symptom evaluation shifts to the severity of a claimant's symptoms. The ALJ must consider the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *See* 20 C.F.R. §§ 404.1529(a) and (c); SSR16-3p, 2016 WL 1119029, at *4. In making this determination, the ALJ will consider the following:

(i)  Your daily activities;

(ii)  The location, duration, frequency, and intensity of your pain or other symptoms;

(iii)  Precipitating and aggravating factors;

(iv)  The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v)  Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)  Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)  Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

An ALJ may not consider only objective medical evidence in determining disability unless this evidence alone supports a finding of disability.  SSR 16-3p, 2016 WL 1119029, at *5 ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms."); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").  Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9.  *See also id.* at *7 (noting that the ALJ "will discuss the factors pertinent to the evidence of record").

At the same time, the ALJ is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence.  *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) ("[T]he ALJ expressly stated that she had considered [the predecessor to SSR 16-3p], which details the factors to address in assessing credibility.  There is no indication that the ALJ failed to do so.  This claim therefore lacks merit. . . .").  Further, the ALJ's determination regarding the consistency of a claimant's subjective complaints with the record evidence is "to be accorded great weight and deference. . . ."  *Walters*

22

*v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of H.H.S.*, 818 F.2d 461, 463 (6th Cir. 1987)).[15]

a.   *Fibromyalgia*

Plaintiff argues that the ALJ erred by requiring objective medical evidence in her analysis of plaintiff's fibromyalgia.  Plaintiff cites *Preston v. Sec'y of Health & Hum. Servs.*, 854 F.2d 815, 820 (6th Cir. 1988), *Rogers*, 486 F.3d at 244, and *Lawson v. Astrue*, 695 F. Supp. 2d 729, 745 (S.D. Ohio 2010), as supporting her position.  The Commissioner argues that objective medical evidence remains relevant—even if to a limited extent in the fibromyalgia context.  In any event, the Commissioner argues that the ALJ's decision reflects consideration of plaintiff's reported symptoms, activities of daily living, treatments, and inconsistent statements regarding her work history and not solely (or even primarily) objective medical evidence.

In *Preston*, the Sixth Circuit recognized that "standard clinical tests and observations" for assessing neurologic and orthopedic causes of pain—such as CT scans, x-rays, muscle strength, neurological reactions, and range of motion—"are not highly relevant in diagnosing [fibromyalgia] or its severity."  854 F.2d at 820.  In *Rogers*, the Sixth Circuit noted that a patient with fibromyalgia may not have "objectively alarming signs" and that its diagnosis requires testing focal points for tenderness and ruling out other conditions.  486 F.3d at 243-4 (citing *Preston*, 854 F.2d at 820).  In *Lawson*, the Court held that a claimant with fibromyalgia's

---

[15] The *Walters* court noted that substantial deference was appropriate due in large part to an ALJ's unique observation of a witness's "demeanor and credibility."  With the elimination of the term "credibility" in SSR 16-3p, it is questionable whether an ALJ's observations should be given any deference.  At least one Sixth Circuit decision subsequent to the enactment of SSR 16-3p, however, has retained the notion of deference to the ALJ in the symptom-consistency context.  *See, e.g., Lipanye*, 802 F. App'x at 171 ("It is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements.").

"normal" clinical findings do not necessarily "undermine the limitations" endorsed by a treating physician. *Id.* at 745.

The ALJ's assessment of plaintiff's fibromyalgia symptoms is supported by substantial evidence. Plaintiff argues that *Lawson* "recognized that tender points are not required for fibromyalgia." (Doc. 9 at PAGEID 2109). In fact, the *Lawson* Court noted that "most experts no longer require *a specific number* of tender points" to diagnose fibromyalgia. *Lawson*, 695 F. Supp. 2d at 735 (emphasis added) (quoting Merck Manual Online Medical Library, http://www.merck.com). The ALJ here acknowledged that plaintiff's fibromyalgia was "consistently noted by medical professionals since the amended alleged onset date" but also that "no specific description of deficits arising from this condition" were provided, such as "specific tender point locations. . . ." (Tr. 24-25). (*See also, e.g.*, Tr. 20, referring to Tr. 545 (Mar. 2019 Dr. Farhey record) (multiple tender points); Tr. 21, referring to Tr. 1153 (Oct. 2019 Dr. Farhey record) (multiple tender points)). Plaintiff's rheumatologist, Dr. Farhey, *failed to opine at all* regarding whether plaintiff had any functional limitations associated with the fibromyalgia diagnosis. *See Clemow v. Comm'r of Soc. Sec.*, No. 1:20-cv-592, 2021 WL 6125021, at *4 (S.D. Ohio Dec. 28, 2021) (quoting SSR 12-2p, 2012 WL 3104869, at *2 (April 3, 2014)) ("SSR 12-2p [Evaluation of Fibromyalgia] continues to require 'sufficient *objective evidence* to support a finding that the person's impairment(s) *so limits the person's functional abilities* that it precludes him or her from performing any substantial gainful activity.'") (second emphasis added). The Court finds no error in the ALJ's consideration of plaintiff's tender points.

In addition, contrary to plaintiff's suggestion otherwise, the ALJ considered her reported fatigue (*see, e.g.*, Tr. 20, referring to Tr. 420 (Jan. 2019 Dr. McCoy record); Tr. 22, referring to

Tr. 1848-49 (Jan. 2019 and Aug. 2020 Dr. McCoy records)) and included a detailed summary of records related to plaintiff's mental impairments (*see* Tr. 22-23). Within that summary, however, the ALJ noted that various elements of the corresponding records were inconsistent with related functional limitations. (*See, e.g.*, Tr. 23, referring to Tr. 1932, 2032 (July 2019 and Jan. 2020 Dr. Farhey records) (normal mood, affect, behavior, judgment, and thought content); Tr. 1831-32, 1852-53 (July and Aug. 2020 Dr. McCoy records) (depression not reported; normal mood, behavior, thought content and judgment recorded)).

The ALJ also considered that Dr. Farhey recommended physical activity (Tr. 20, referring to Tr. 560 (Mar. 2019 Dr. Farhey record) (referral to physical and aquatic therapies); Tr. 21, referring to Tr. 978, 981, and 990 (July 2019 Dr. Farhey record) (recommending continued exercise and similar treatment as was recommended in March 2019)) and that plaintiff reported a positive response to medications (*see, e.g.*, Tr. 20, referring to Tr. 420 (Jan. 2019 Dr. McCoy record) (cannabinoids helped pain "tremendously"); Tr. 21, referring to Tr. 2028 (Jan. 2020 Dr. Farhey record) (noting improvements with medication and fewer flares); Tr. 1827 (July 2020 Dr. McCoy record) (noting plaintiff's report that fibromyalgia symptoms were improving with medication)). *See* 20 C.F.R. §§ 404.1529(c)(3)(ii), (iv), and (v).

Plaintiff also faults the ALJ for referring to conservative treatments.[16] (*See, e.g.*, Tr. 25 and 27). Courts routinely, however, uphold an ALJ's consideration of the conservative nature of a claimant's treatment as one factor in evaluating a claimant's subjective symptoms. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 638-39 (6th Cir. 2016) (claimant's routine and/or

---

[16] Plaintiff makes this argument with respect to her fibromyalgia, migraines, and mental impairments. (*See* Doc. 9 at PAGEID 2115, 2117).

conservative treatment for allegedly disabling impairments supported ALJ's assessment) (citing *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (finding that the ALJ reasonably discounted a doctor's proposed limitations because, among other things, the claimant was receiving conservative treatment)); *McKenzie v. Comm'r of Soc. Sec.*, 215 F.3d 1327, 2000 WL 687680, at *4 (6th Cir. May 19, 2000) (unpublished opinion) ("Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment.")).  The Court appreciates that the extent of treatment pursued does not necessarily translate into the extent to which a claimant is functionally limited.  Nevertheless, the Court is not persuaded that the ALJ's consideration of plaintiff's level and type of treatment was inappropriate.

Plaintiff also argues that the ALJ's references to surgery and emergency care, in particular, were inapposite to fibromyalgia, migraines, or mental impairments.  In context, however, the ALJ's reference to a lack of surgical interventions appears to refer to plaintiff's musculoskeletal or other impairments.  (*See* Tr. 25).  And while evidence of hospitalization is not required to support a finding of disabling mental impairments, it is a factor appropriately considered by the ALJ.  *See Tracey v. Comm'r of Soc. Sec.*, No. 2:14-cv-1379, 2015 WL 5450915, at *3 (S.D. Ohio Sept. 17, 2015).

Finally, as discussed in connection with the medical opinion evidence, the ALJ appropriately considered plaintiff's reported daily activities in connection with the symptom-consistency analysis.  (*See, e.g.*, Tr. 22, 24).  *See Temples*, 515 F. App'x at 462 (citing *Walters*, 127 F.3d at 532) ("[T]he ALJ properly considered [the plaintiff's ability to perform day-to-day activities] as one factor in determining whether [the plaintiff's] testimony was credible.").  *See also* 20 C.F.R. § 404.1529(c)(3)(i).

      b. *Migraines*

Plaintiff argues that the ALJ failed to comply with SSR 19-4p when evaluating her

migraine symptoms—in particular, the ALJ did not address their frequency, severity, and

duration. The Commissioner argues that ALJ properly found that their reported severity was

inconsistent with other record evidence—such as treatment history, improvements with

medications, and decreasing issues with side effects.

Where SSR 19-4p discusses the assessment of migraines in the context of the RFC

determination—as opposed to the assessment of whether migraines are a medically determinable

impairment that equals a Listing—it states:

> We consider the extent to which the person's impairment-related symptoms are
> consistent with the evidence in the record. For example, symptoms of a primary
> headache disorder, such as photophobia, may cause a person to have difficulty
> sustaining attention and concentration. *Consistency and supportability between
> reported symptoms and objective medical evidence is key in assessing the RFC.*

SSR 19-4p, 2019 WL 4169635, at * 8 (emphasis added).

The ALJ's assessment of plaintiff's migraine symptoms is consistent with this guidance

and supported by substantial evidence. As noted above, the ALJ referred to treatment records

since the amended onset date from Dr. McCoy showing that migraine medications were effective

(Tr. 25, referring Tr. 1827 (July 2020 Dr. McCoy record)), lightheadedness and dizziness had

dropped as a symptom/side-effect of her related medications (*id.*, referring to Tr. 1831, 1852

(July and Aug. 2020 Dr. McCoy records)), that a reported uptick in headaches could be related to

Imitrex (Tr. 27, referring to Tr. 1832 (July 2020 Dr. McCoy record)), and that plaintiff was not

reporting headaches as a symptom by August 2020 (*id.*, referring to Tr. 1852 (Dr. McCoy

record)). *See* 20 C.F.R. §§ 404.1529(c)(3)(ii) and (iv). As noted above, the ALJ also fairly

considered plaintiff's activities of daily living as part of her overall assessment of the severity of plaintiff's symptoms, *see Temples*, 515 F. App'x at 462, and did not err by considering plaintiff's relatively conservative treatment regimen, *Kepke*, 636 F. App'x at 638-39.  *See* 20 C.F.R. § 404.1529(c)(3)(i).

          c.  *Mental health impairments*

Plaintiff argues that the ALJ overstated the lack of signs consistent with disabling mental health impairments because the records that she referenced are those of non-mental-health specialists.  Plaintiff also argues that the ALJ ignored her sleep issues and did not mention all of her mental-impairment-related medications.

The ALJ's assessment of plaintiff's mental impairment symptoms is supported by substantial evidence.  As to the first argument, plaintiff elsewhere acknowledges that plaintiff did not seek treatment from mental health specialists (Doc. 9 at PAGEID 2115), so the evidence that plaintiff argues that the ALJ should have relied on is not in the record.  *Cf. Foster*, 279 F.3d at 353 ("The burden lies with the claimant to prove that she is disabled.").  As to the second argument, the ALJ specifically referenced plaintiff's reported four to six hours of nightly sleep. (*See* Tr. 25).  The fact that the ALJ did not mention every one of plaintiff's medications for her mental impairments is not error, particularly where plaintiff fails to identify any functional limitation related thereto.  *See Caleb H. v. Comm'r of Soc. Sec.*, No. 2:21-cv-3831, 2022 WL 3353909, at *10 (S.D. Ohio Aug. 15, 2022) (the fact that an ALJ does not cite specific evidence does not indicate that it was not considered).  Moreover, the ALJ mentioned plaintiff's use of medications for her mental impairments in the past (*see* Tr. 23) and emphasized plaintiff's

testimony that she did not treat with a mental health specialist or take related medication for her mental impairments as of the date of the hearing (Tr. 25, referring to Tr. 47 (testimony)).

Finally, the ALJ clearly considered plaintiff's work history, as she referenced plaintiff's inconsistent statements related thereto.  (*See* Tr. 22).  In any event, strong work history is only one element of the symptom-consistency evaluation.  *See* 20 C.F.R. § 404.1529(c)(3).  The Court finds no error related to the ALJ's consideration of plaintiff's work history.

In sum, the ALJ's determination regarding the consistency of plaintiff's reported symptoms associated with her fibromyalgia, migraines, and mental impairments with the record is supported by substantial evidence.  The ALJ was not required to discuss every symptom-consistency assessment factor, *see White*, 572 F.3d at 287, and her analysis reflects due consideration of the regulatory criteria.  To the extent that plaintiff challenges the ALJ's assessment of her subjective symptoms in assignments of error one, two, four, and five, they are overruled.

4.  Step five/Grid errors

Plaintiff's arguments related to the ALJ's questions of the VE and the Grid asserted in assignment of error six and elsewhere fail.  The Court concludes that the ALJ made no error in her evaluation of the medical opinion evidence or plaintiff's subjective symptoms.  Plaintiff has not otherwise raised error with respect to the ALJ's RFC determination.  Because these arguments depend on the conclusion that the ALJ's RFC determination is not based on substantial evidence, they are without merit.  Assignment of error six is overruled.

29

### III.  Conclusion

Based on the foregoing, plaintiff's Statement of Errors (Doc. 9) is **OVERRULED**, and the Commissioner's non-disability finding is **AFFIRMED**.  **IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date: 4/5/2023

Karen L. Litkovitz
United States Magistrate Judge

30